[S. F. No. 3723.    Department One.—March 26, 1904.]

## HEINE PIANO COMPANY, Appellant, v. EMILIE CRE-PIN, Respondent.

SALE OF PIANO—EXECUTORY CONTRACT—BREACH BY VENDOR—USE OF DIFFERENT PIANO—RIGHT OF POSSESSION—REPLEVIN.—Where a piano company sold a numbered piano of a particular make, under an executory contract for payment in installments, reserving title until full payment, and after part performance by the purchaser broke its contract by shipping the piano to the manufacturers, and then agreed to furnish the purchaser the use of a cheaper piano of its own make until she could be furnished with a piano of the same make as that contracted for, or one of equal merit, the purchaser had the right of possession of the latter piano until the contract was substantially fulfilled; and after the purchaser had made payments equal to the value of the cheaper piano the piano company cannot maintain replevin therefor on the ground that all of the payments had not been made under the original contract, while it was itself in default in' not substantially complying therewith, and had not returned the money which the purchaser had been induced to pay by reason of its promise.

APPEAL from an order of the Superior Court of Sonoma County denying a new trial. J. E. Prewitt, Judge presiding.

The facts are stated in the opinion.

Curtis Hillyer, and W. C. McInnis, for Appellant.

E. W. McGraw, for Respondent.

HARRISON, C.—The defendant entered into a contract with G. O. Heine & Co. (to whose interest herein the plaintiff has succeeded), June 9, 1897, for the purchase of a piano marked "Shaw No. 14391," for which she agreed to pay $575, as follows, viz.: $175 in a Steinway piano which she then owned, and the remainder in monthly installments until the

CXLII. Cal.—39

whole of the purchase price should be paid. The contract provided that the piano should remain the property of Heine & Co. until the full amount of the purchase price should be paid, and that after such payment they would execute to the defendant a bill of sale for it; and that until the execution of such bill of sale no title to the piano should vest in her. It also provided that if she failed to pay any of the monthly installments the whole of the unpaid portion of the purchase price should become due at the option of Heine & Co., or they might, at their option, take the piano from her possession. At the time of the execution of the contract the defendant delivered to Heine & Co. the Steinway piano named therein, and thereafter for several months paid the monthly installments provided for in the contract. In November, 1898, the defendant was about to move from San Francisco to Kenwood, and at her request Heine & Co. agreed to have the piano boxed and shipped to her at Kenwood. Instead of doing so, however, they removed the piano to their warerooms in San Francisco and shipped it to the manufacturers in one of the eastern states. A few days thereafter the defendant visited their office, and they there informed her of what they had done, and urged her to accept another piano in lieu of the Shaw piano. She, however, expressed her dissatisfaction, and insisted that she had contracted for the Shaw piano, and that that was the one she wanted; that none of the pianos shown her suited her or compared with the Shaw piano. Upon being asked which one of those shown her she "liked best," she indicated the Heine piano which is the subject of this suit, and thereupon Mr. Heine said to her: "If you will let me send it to you at Kenwood you may keep it as long as you live there, or until you are otherwise permanently settled, and if you return to San Francisco then you may choose any piano that I have in the store of equal value with the Shaw piano. In the mean time I will hear from the Shaw Piano Company." She assented to this proposition, and the piano was thereupon sent to her at Kenwood, and she continued to make payments of the installments named in her contract, the last payment being made January 11, 1902. During the time she had the Shaw piano the installments paid by her amounted to $62.50, and after she received the Heine piano she paid installments amounting to $320, making $382.50 paid by her

in money, which with the $175 allowed for the Steinway piano amounted to $557.50 received by the plaintiff. Mr. Heine told her when he proposed to let her have the use of the Heine piano that its price was $475. February 5, 1902, she wrote to the plaintiff to the effect that she had paid more than the price of the Heine piano, and would accept it for the amount she had already paid, provided they would send her a receipted bill for the same, saying also: "Otherwise I shall insist upon receiving at once Shaw piano No. 14391, and shall continue to pay for same in monthly installments of: ten dollars as specified in my contract." This proposition was not accepted by plaintiff, but, on the contrary, in its reply, written two days thereafter, it said to her: "You had your Shaw piano exchanged for the Heine piano in the early part of 1898 at your own request," and suggested that if she would come to the city, "we could then talk this matter over and arrive at some definite conclusion as regards your *status* with us." To this letter she replied March 10, 1902, declining any more verbal arrangements, and saying that she had no other proposition to make than that which was contained in her letter of February 5th. The plaintiff thereupon commenced the present action for the possession of the Heine piano or its value, alleging its ownership on November 23, 1898, and that at all times since April 10, 1902, (the date on which it made demand for the piano,) it was entitled to its immediate possession. The ownership of the piano was not denied in the answer of the defendant, and the sole issue presented for determination was the right to its possession.

After receiving evidence of the foregoing facts, the court instructed the jury that if they believed that the plaintiff had kept or fulfilled the terms of its contract they must find in favor of the plaintiff; and that if they believed from the evidence that the plaintiff gave to the defendant the possession of the Heine piano in place of the Shaw piano which she contracted for, to be retained by her until it should be replaced by a Shaw piano, or one of equal value thereto, and that the plaintiff had not so replaced it, they must find for the defendant. The jury rendered a verdict in favor of the defendant, and from an order denying a new trial the plaintiff has appealed.

At the trial the plaintiff introduced in evidence the contract

of June 5, 1897, together with a statement of the installments paid by the defendant, and bases its right of recovery upon the provisions of that contract. It also contended that this contract was modified in November, 1898, by an agreement on the part of the defendant to accept the Heine piano in lieu of the Shaw piano, for which she had contracted, and that her right to retain possession of the Heine piano was conditioned upon her making the payments for the Shaw piano as provided in the original contract.

The relation of the parties to the Heine piano in controversy, and their respective rights and obligations growing out of that relation, are not governed by the terms of the instrument of June 5, 1897, but are rather to be ascertained from the subsequent conduct of the parties in reference thereto. The plaintiff cannot maintain an action against the defendant to enforce the terms of that agreement while it is itself in default in the performance of its own obligations thereunder to her. By that instrument it agreed, in effect, that the defendant should have the use and possession of the Shaw piano so long as she should make payment of the installments of the purchase price as therein provided. It, however, violated this part of its agreement in November, 1898, when instead of shipping the piano to Kenwood, as requested by her, and as it had agreed to do, it, without her consent, shipped it east. The defendant was not, however, required to consider the contract as thereby terminated and demand from the plaintiff restitution of what she had paid on the contract, and it was doubtless to avoid this result that the plaintiff made the proposition to her which is quoted above. The plaintiff was anxious to preserve the obligations in its behalf which the defendant had assumed in that instrument, and for that purpose proposed to allow her the use of the Heine piano until it could itself comply with its aforesaid obligation by procuring for her the Shaw piano, or satisfy her with one of equal merit. It is very clear that there was no agreement between the parties that the Heine piano should be substituted for the Shaw piano, for whose purchase the defendant had contracted. She so testified, and she also testified that in 1899, when she visited the store of the plaintiff and asked if they had yet received any Shaw pianos, she was told that "Mr. Heine was in the East and would get a new supply

of pianos in shortly and then I could come and have my choice of anything in the store." The proposition of the plaintiff was, that she should at some time thereafter choose "any piano" that it might have in its store "of equal merit with the Shaw piano," and the statement "in the mean time I will hear from the Shaw Piano Company," could have had no other meaning for her than that it would endeavor to secure for her a Shaw piano. Its proposition to send her the Heine piano was for the purpose of inducing her to continue to make the payments provided by the original contract, and gave her the right to retain it until it should place her in possession of the Shaw piano, or one with which she should be satisfied. The proposition that she might keep it until she should be "permanently settled" was not intended as a limit of the time during which she might retain it, but is to be read in connection with the remaining part of the proposition, and interpreted as stating to her that she was to be allowed to retain it until the plaintiff could furnish her with such a piano as it had proposed.

Her acceptance of this proposition, as well as the condonation thereby implied of the plaintiff's breach of the contract was upon the condition that the plaintiff would comply with that contract. Her payment of the installments subsequent to November, 1898, was by reason of the promise of the plaintiff thus to procure for her a Shaw piano, but her failure to make further payments after the plaintiff had for more than three years, without any excuse therefor, failed to comply with its terms, will not give to it a right of action upon the original contract, or create a forfeiture of the payments she had theretofore made.

As the plaintiff had not furnished the defendant with a Shaw piano at the time it commenced this action, it had not complied with its own agreement, and cannot maintain an action against her arising out of her failure to make payment of the installments provided in that contract. Until it shall comply with the conditions upon which she was induced to make those payments, it will not be entitled to the possession of the Heine piano, without returning to her the money which she was induced to pay to it by reason of its promise. The court, therefore, did not commit any error in giving the jury the above instruction.

We advise that the order appealed from be affirmed.

Cooper, C., and Gray, C., concurred.

For the foregoing reasons the order appealed from is affirmed.            ' Shaw, J., Angellotti, J., Van Dyke, J.

Hearing in Bank denied.